749 F.2d 571
 22 ERC 1572
 DAN CAPUTO CO. and Wagner Construction Co., A Joint Venture,
Plaintiff- Appellant,
v.
RUSSIAN RIVER COUNTY SANITATION DISTRICT, A Public Entity,
State of California, State Water Resources Control
Board; United States Environmental
Protection Agency, etc. et
al., Defendants-Appellees.
 No. 83-2166.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 14, 1984.
Decided Dec. 13, 1984.
 
 John S. Pachter, Wickwire, Gavin & Gibbs, P.C., Vienna, Va., for plaintiff-appellant.
 David A. Stein, Lempres & Wulfsberg, Oakland, Cal., David W. Hamilton, Deputy Atty. Gen., San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before KENNEDY and CANBY, Circuit Judges, and PFAELZER*, District Judge.
 CANBY, Circuit Judge:
 
 
 1
 Dan Caputo Co. and Wagner Construction Co. (Caputo/Wagner) had a contractual dispute with the Russian River Sanitation District (Russian River) regarding Caputo/Wagner's construction of a sewage treatment system for Russian River. Caputo/Wagner filed this action to prevent Russian River from awarding a contract to correct alleged defects in Caputo/Wagner's work. The district court dismissed Caputo/Wagner's action for lack of standing. We affirm in part, and because an aspect of the case has become moot, vacate and remand in part.
 
 BACKGROUND
 
 2
 In 1979, pursuant to a grant from the Environmental Protection Agency, Russian River awarded Caputo/Wagner a contract to construct a sewage treatment system. Caputo/Wagner stopped work on the contract in 1981 when a dispute arose between Caputo/Wagner and Russian River about Caputo/Wagner's compliance with its contractual obligations. The dispute was taken to state court and was still pending when Caputo/Wagner filed this action. When Caputo/Wagner stopped work, $900,000 of EPA's grant to Russian River remained unspent.
 
 
 3
 Sometime after Caputo/Wagner stopped work, the California Water Resources Control Board (WRCB) authorized Russian River to let a contract for correction and completion of the sewage treatment system. Russian River, the WRCB, and EPA agreed that Russian River could fund the corrective work contract with the $900,000 remaining from the grant for the sewage treatment system. Russian River solicited bids for the corrective work contract on June 16, 1982.
 
 
 4
 On June 23, 1982, Caputo/Wagner filed a bid protest with EPA. Caputo/Wagner alleged that the solicitation was unlawful because the bidding documents violated EPA standards. See 40 C.F.R. Sec. 35.938-4 (1983). Caputo/Wagner also alleged that the contract offered by Russian River contained unlawful terms, such as a provision preventing the contractor from being compensated for losses due to an unreasonable suspension by Russian River. See 40 C.F.R. Sec. 35.938-8 (1983); Supplemental General Conditions Sec. 4(b), 40 C.F.R. Part 35, Subpart E, Appendix C-2. Caputo/Wagner did not bid on the corrective work contract. EPA denied Caputo/Wagner's bid protest on the ground that as a nonbidder, Caputo/Wagner lacked standing to challenge the procurement process.
 
 
 5
 Caputo/Wagner filed this action against Russian River, the WRCB, and EPA on December 10, 1982. Caputo/Wagner claimed that Russian River's bid solicitation and the contract it offered violated EPA regulations; that the WRCB unlawfully failed to insure Russian River's compliance with the regulations; and that EPA improperly dismissed Caputo/Wagner's bid protest. The district court dismissed Caputo/Wagner's complaint for lack of standing. The court held that Caputo/Wagner did not meet article III's injury-in-fact requirement because Caputo/Wagner did not allege either that it had bid on the corrective work contract or that it would have been awarded the contract if the alleged violations had not occurred.
 
 
 6
 Caputo/Wagner subsequently attempted to amend its complaint. The proposed amendment did not challenge the alleged defects in the bid solicitation; rather, it challenged the decision to use the $900,000 remaining from EPA's initial grant as a source of funds for the corrective work contract. The district court denied Caputo/Wagner's motion to amend on the ground that the added claims did not rectify the standing problem.
 
 
 7
 Caputo/Wagner appeals both the dismissal of its complaint and the denial of its motion to amend.
 
 ANALYSIS
 I. Dismissal of the Original Complaint
 
 8
 The original complaint challenged the procurement process; it alleged that the bid solicitation violated several EPA regulations, and that therefore EPA, the WRCB, and Russian River should have stopped the solicitation.
 
 
 9
 The district court dismissed the original complaint for lack of standing, reasoning that as a nonbidder, Caputo/Wagner suffered no injury from the alleged defects in the solicitation. We do not reach the question whether nonbidders can challenge sewage system procurement, however, for Caputo/Wagner's particular challenge has become moot.
 
 
 10
 With regard to its challenge to the bid solicitation, Caputo/Wagner requested as relief only an order enjoining construction until EPA resolved the merits of its bid protest; it made no plea for damages. The corrective work contracts, however, have been awarded and by now the work under them has been completed. There remains no effective relief which we can offer Caputo/Wagner. Accordingly, we vacate the district court's decision and remand with instructions that Caputo/Wagner's challenge to the bid solicitation be dismissed as moot. See Enrico's Inc. v. Rice, 730 F.2d 1250 (9th Cir.1984).
 
 II. Denial of Leave to Amend
 
 11
 Caputo/Wagner attempted to amend its complaint to add a claim that EPA, the WRCB, and Russian River acted unlawfully when they agreed that Russian River could use the remaining $900,000 of the grant to pay for the corrective work contract. The district court, however, denied the amendment as to all three defendants on the ground that Caputo/Wagner lacked standing to challenge the reallocation decision.
 
 
 12
 We review denials of motions to amend under an abuse of discretion standard. Keniston v. Roberts, 717 F.2d 1295, 1300 (9th Cir.1983). Motions to amend should be freely given, id., but may be denied if the proposed amendment will not save the plaintiff's suit, Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1520 (9th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984). If the district court made the correct determination regarding Caputo/Wagner's standing, or if some other fatal defect exists in the proposed amended complaint, then of course the district court did not abuse its discretion in denying the motion to amend.[1]
 
 A. EPA
 
 13
 Caputo/Wagner presents two theories to support its contention that it has standing to press its challenge to EPA's involvement in the funding decision. First, Caputo/Wagner argues that it meets the requirements for raising a challenge to agency action under Sec. 10(a) of the Administrative Procedure Act (APA), 5 U.S.C. Sec. 702 (1982). As Caputo/Wagner recognizes, those requirements are twofold: Caputo/Wagner must show both that it satisfies the requirement of actual injury inherent in article III and that its interests are arguably within the zone of interests protected by the statutory or constitutional provision at issue. See Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 152-53, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970); Glacier Park Foundation v. Watt, 663 F.2d 882, 885 (9th Cir.1981).
 
 
 14
 Caputo/Wagner does meet the injury-in-fact half of the standing test applicable to challenges to agency action. The allegations in Caputo/Wagner's complaint must be charitably construed. Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 109, 99 S.Ct. 1601, 1612, 60 L.Ed.2d 66 (1979). So construed, the amended complaint alleges that Caputo/Wagner has a right to the reallocated $900,000, and that once the reallocated funds are spent, Caputo/Wagner will be unable to collect the $900,000 from Russian River. From the allegations, "it reasonably could be inferred that ... there is a substantial probability" that Caputo/Wagner suffers harm from the reallocation. See Warth v. Seldin, 422 U.S. 490, 504, 95 S.Ct. 2197, 2208, 45 L.Ed.2d 343 (1975).
 
 
 15
 Caputo/Wagner, however, does not meet the zone-of-interest half of the standing requirement. Title II of the Clean Water Act, 33 U.S.C. Secs. 1281-1297 (1982), authorizes EPA to make grants to municipalities for the construction of sewage treatment works. Caputo/Wagner, however, does not point to any provision in Title II which arguably protects a contractor against the reallocation of grant funds by EPA after a contract dispute, nor can we find one in an independent review.
 
 
 16
 Caputo/Wagner does argue that its interests are protected by 40 C.F.R. Sec. 35.939 (1983), which allows would-be bidders to protest bid solicitations to EPA. Although courts have expanded the zone-of-interest test by applying it to regulations as well as to statutes and constitutional provisions, e.g., Gull Airborne Instruments, Inc. v. Weinberger, 694 F.2d 838, 842 (D.C.Cir.1982); see Stratman v. Watt, 656 F.2d 1321, 1324 (9th Cir.1981), cert. denied, 456 U.S. 901, 102 S.Ct. 1744, 72 L.Ed.2d 170 (1982), the EPA regulation here does not assist Caputo/Wagner. Section 35.939 addresses only irregularities in the procurement process, such as defects in bidding documents. See Sec. 35.939(c)(1)(iii) (1983). It was not intended to provide a forum for resolving funding disputes. A more pertinent regulation is Sec. 35.936-9 (1983), which does create a mechanism for challenging funding decisions. That section, however, provides that only the grantee, Russian River in this case, can bring the funding protest. It is therefore clear that the regulations are not designed to protect the interests of contractors in grant allocations.
 
 
 17
 Caputo/Wagner's second theory is that the citizen-suit provision of the Clean Water Act, 33 U.S.C. Sec. 1365(a)(2) (1982), provides Caputo/Wagner with standing to press its funding challenge. Caputo/Wagner, however, suffers financial injury only from the reallocation of grant funds. The purpose of the citizen-suit provision "is to ensure that an interest in the environment and clean water, whether or not economically based, is a sufficient basis for a citizen suit." Gonzales v. Gorsuch, 688 F.2d 1263, 1268 (9th Cir.1982). Caputo/Wagner's claim does not arise from an interest in the environment, and does not seek to vindicate environmental concerns. Therefore the citizen-suit provision, like Sec. 10(a) of the APA, does not accord Caputo/Wagner standing to vindicate its interest in the remaining grant funds.
 
 
 18
 B. The California Water Resources Control Board
 
 
 19
 Caputo/Wagner's amended claim against the WRCB could not arise under the APA since the WRCB is a state, not a federal, agency. Nevertheless, the test for standing in actions not involving the APA is for practical purposes the same as the test applicable to actions falling under the APA. Article III's requirement of injury in fact of course applies in both contexts. And the zone-of-interest requirement formulated in Data Processing for actions under the APA has been adopted as a generally applicable prudential limitation on standing. E.g., Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 474-75, 102 S.Ct. 752, 759-60, 70 L.Ed.2d 700 (1982).
 
 
 20
 Caputo/Wagner meets the injury-in-fact requirement with regard to its amended claim against EPA. See supra pt. II.A. Precisely the same considerations apply with regard to its amended claim against the WRCB. Therefore, Caputo/Wagner's amended complaint against the WRCB satisfies the first half of the standing test.
 
 
 21
 The amended complaint does not, however, meet the zone-of-interest requirement. Caputo/Wagner alleges that the state WRCB violated 40 C.F.R. Secs. 35.1005 and 35.1030-6 (1982) (transferred with amendments by 48 Fed.Reg. 37,814, 37,818 (1983) to 40 C.F.R. Secs. 35.3005(a), 35.3010(b)) when it approved the fund reallocation. But section 35.1005 does not arguably protect Caputo/Wagner's interest. It does not establish a standard of conduct which could be construed as protecting contractors from grant reallocations, but rather only expresses EPA's intent to decentralize the administration of the construction grant program. Nor does Sec. 35.1030-6, which indirectly establishes standards of conduct by requiring that state agencies comply with applicable federal regulations, give Caputo/Wagner standing. Before a claim for standing under Sec. 35.1030-6 can be assessed, a plaintiff must specify the applicable federal regulations which it regards as violated; Caputo/Wagner, however, fails to meet that obligation. Therefore, we agree with the district court that Caputo/Wagner lacked standing to sue the WRCB for its participation in the funding decision.[2]
 
 C. Russian River
 
 22
 Caputo/Wagner's amended claim against Russian River is in less embryonic form than are its amended claims against EPA and the WRCB. Caputo/Wagner's amended claims against EPA and the WRCB did not identify a single provision of federal law which arguably protected Caputo/Wagner against the participation of those agencies in the reallocation decision. Arguably at least, Caputo/Wagner has identified a federal regulation which protects contractors from improper grant reallocations by districts such as Russian River: 40 C.F.R. Sec. 35.936-5(a) (1983). Caputo/Wagner alleges that Russian River violated that regulation, which provides that grantees are "responsible for the settlement and satisfaction of all contractual and administrative issues arising out of subagreements entered into under the grant ... in accordance with sound business judgment and good administrative practice."
 
 
 23
 We do not need to decide, however, whether Caputo/Wagner satisfies the standing requirement in its amended claim against Russian River. Even if that requirement is met, the district court's denial of leave to amend must be affirmed on the ground that Caputo/Wagner fails to show that Congress provided it with a private right of action against Russian River.
 
 
 24
 The first place to look in considering whether Caputo/Wagner has a private right of action is the citizen-suit provision of the Clean Water Act, 33 U.S.C. Sec. 1365(a)(1) (1982). That provision, however, gives a cause of action only to those who allege a violation of an effluent standard or an order respecting an effluent standard. Caputo/Wagner makes no such allegation.
 
 
 25
 To show that some other provision of the Clean Water Act gives Caputo/Wagner a private right of action against Russian River, Caputo/Wagner would have to develop a four-factor analysis along the lines specified in Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). Caputo/Wagner does not undertake that task, nor does our independent review of the Clean Water Act reveal a likely statutory candidate for implying a private right of action.
 
 
 26
 Title 40 C.F.R. Sec. 35.936-5(a) does not itself provide Caputo/Wagner with a private right of action. To infer a private right of action from Sec. 35.936-5(a), we would have to be convinced both that Congress accorded EPA the authority to establish private rights of action and that EPA intended to create such a right through Sec. 35.936-5(a). We can find absolutely no indication that EPA intended to give Caputo/Wagner a cause of action. Therefore, assuming arguendo that EPA has the statutory power to create rights of action, see 33 U.S.C. Sec. 1361(a) (1982), we hold that Sec. 35.936-5(a) does not authorize Caputo/Wagner's suit.
 
 
 27
 We have concluded that Caputo/Wagner lacks standing to present its amended claims against EPA and the WRCB. Assuming it has standing to sue Russian River, it lacks a private right of action. Clearly, therefore, the district court acted within its discretion in denying in toto Caputo/Wagner's motion to amend. See Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1520 (9th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984).CONCLUSION
 
 
 28
 There is no merit to any of Caputo/Wagner's contentions. The judgment of the district court is affirmed in part and because an aspect of the case is moot, vacated and remanded in part. Costs to be borne by appellant.
 
 
 29
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 
 
 
 *
 The Honorable Mariana R. Pfaelzer, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 The challenge to the reallocation of the $900,000 is not moot. It is unclear whether all of the funds have been spent. If they have not been fully spent, Caputo/Wagner may be accorded relief by further expenditure. Even if the funds are exhausted, relief can be provided to Caputo/Wagner because Caputo/Wagner requests that EPA, the WRCB, and Russian River provide other funds to stand in the place of the $900,000
 
 
 [2]
 Even if Caputo/Wagner established standing, another substantial obstacle would remain in its path: Caputo/Wagner would have to demonstrate that Congress extended it a private right of action to sue the WRCB. We do not reach that issue here