NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 18 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| VAN POUNDS,<br><br>　　　　　Plaintiff-Appellant,<br><br>　v.<br><br>CAMERON SMITH, individually and in his official capacity; et al.,<br><br>　　　　　Defendants-Appellees. | No.　20-35154<br><br>D.C. No. 6:19-cv-00420-MK<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted July 6, 2021
Portland, Oregon

Before:　M. MURPHY,** PAEZ, and BENNETT, Circuit Judges.

Plaintiff-Appellant Van Pounds appeals the district court's order dismissing his complaint with prejudice for failing to state a claim upon which relief can be granted.　The district court adopted the magistrate judge's findings and

---

　　*　This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

　　**　The Honorable Michael R. Murphy, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

recommendation, which found that Pounds failed to plausibly allege First and Fourteenth Amendment claims,[1] and denied Pounds leave to amend his complaint. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse in part, affirm in part, and remand.

Pounds was an attorney employed by the Oregon Department of Consumer and Business Services ("DCBS"). In March 2018, he decided to run for election to the Oregon Supreme Court. After he filed to run, a reporter made two public records requests for certain of Pounds's employment files. The first request sought documents pertaining to Pounds's job titles, "job classifications[,] and salaries from Jan[uary] 1, 2015 until now." The records first produced showed Pounds had changed jobs at least once, and also reflected a small salary reduction. The second request sought "written communication including but not limited to emails, correspondence, investigative reports or other documentation that explains the reasons for Mr. Pounds' demotion and pay cut."

In 2015, the DCBS, unbeknownst to Pounds, investigated Pounds while he was a DCBS supervisor. The 2015 investigation generated a report ("Report"), which stated that "overwhelmingly, employees generally do not trust [Pounds]," and that Pounds "is generally found to be the least credible person in the unit." The State

---

[1] The district court also dismissed Pounds's state law and Fair Credit Reporting Act claims. Pounds does not challenge those rulings on appeal, and thus may not reassert them on remand.

2

says that Pounds was not demoted or subject to any adverse employment action, either as a result of the investigation or for any other reason.

The State released the Report in response to the second records request. When Pounds asked individual defendant Brian Light why DCBS would disclose such a report, he was allegedly told: "That's what you get when you file for public office." DCBS allegedly offered Pounds an opportunity to request a "name-clearing hearing" prior to the release of the Report, but then allegedly released the report before the deadline offered to request the hearing had passed. When DCBS disclosed the Report to the requesting reporter, DCBS wrote: "We believe this investigative report contains the information you are wanting. If, after reading this report, you still want emails, let me know." Soon after, the reporter's newspaper ran an article with the headline: "A state investigation of a candidate for the Oregon Supreme Court found him 'the least credible person in the unit.'" Pounds later lost the election, garnering 26.5% of the vote.

1.   The district court erred in adopting the magistrate judge's finding and recommendation that Pounds's First Amendment claim did not allege state action "reasonably likely to deter [Pounds] from engaging in his First Amendment speech" and thus that he failed to plead an adverse employment action. Reviewing de novo, *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019), we hold that DCBS's disclosure of the Report, which Pounds alleged to contain false stigmatizing

3

information, can constitute an adverse employment action that impermissibly chills protected speech.

We begin by addressing whether there was an adverse employment action. Our circuit has adopted the "reasonably likely to deter" test, where we ask whether Pounds can establish that the actions taken by the defendants were "reasonably likely to deter employees from engaging in constitutionally protected speech." *Coszalter v. City of Salem*, 320 F.3d 968, 970, 976 (9th Cir. 2003). "To constitute an adverse employment action, a government act of retaliation need not be severe and it need not be of a certain kind. Nor does it matter whether an act of retaliation is in the form of the removal of a benefit or the imposition of a burden." *Id.* at 975.

Taking Pounds's allegations as true, we hold that disclosure of a report like this one, allegedly containing false information of this type, prepared by a government agency, regarding a public employee candidate for judicial office, can constitute an adverse employment action for First Amendment purposes. This, after all, was a report finding that state employees overwhelmingly viewed their attorney coworker as untrustworthy and not credible. We reject the DCBS's position that this case involves "[m]ere threats and harsh words" like those in *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998).[2]

---

[2] That DCBS's email producing the Report can be read to falsely affirm that Pounds *was* demoted as a result of the investigation adds to the already sufficient "reasonably likely to deter" allegations.

4

Because we find an adverse employment action, we proceed to a "sequential five-step series of questions":

> (1) whether [plaintiff] spoke on a matter of public concern; (2) whether [plaintiff] spoke as a private citizen or public employee; (3) whether [plaintiff's] protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating [plaintiff] differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Greisen v. Hanken*, 925 F.3d 1097, 1108 (9th Cir. 2019). Pounds has the burden of proving the answers to the first three questions are "yes." *Id*. If he succeeds, the burden shifts to the State for the final two steps. *Id.*

DCBS concedes that Pounds's candidacy for the Oregon Supreme Court satisfies the first two steps. As to the third, Pounds's pleadings must show that he can:

> (1) introduce evidence that the speech and adverse action were proximate in time, such that a jury could infer that the action took place in retaliation for [his] speech; (2) introduce evidence that the employer expressed opposition to the speech; or (3) introduce evidence that the proffered explanations for the adverse actions were false and pretextual.

*Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 750 (9th Cir. 2010).

Pounds has sufficiently alleged at least two of the three. First, DCBS disclosed the Report proximate in time to Pounds's protected speech—his candidacy

5

for the Oregon Supreme Court.  Pounds filed for the position on March 5, 2018, and DCBS produced the Report on March 28, 2018.

And second, there is sufficient evidence of pretext.  The government claims it had to release the Report because of its obligation to comply with Oregon's public records law.  But the Report fell outside the ambit of the requested documents.  The DCBS maintains that Pounds was never demoted.  For that reason, the Report could not "*explain the reasons for*" a demotion that never took place.  This sufficiently establishes a triable issue as to pretext.[3]

Turning to the final two questions, as to which the government bears the burden, DCBS contends that it "had an adequate justification for treating [Pounds] differently from any other member of the general public" on account of the public records request. *Id. at* 752.  We reject this argument because the Report fell outside the ambit of the requested documents.  Nor has DCBS established at the pleading stage that it would have reached the same decision regarding disclosure absent Pounds's protected conduct.  Even putting aside that the records request came about only because of the protected speech, the State turned over damning documents that the records request *did not call for*.  Looking at the allegations in the light most

---

[3] Having found sufficient allegations of temporal proximity and pretext, we need not decide whether the statement "[t]hat's what you get when you file for public office" shows employer opposition to the protected speech.

6

favorable to Pounds, we can infer that the protected speech played a role in the decision. *See id.*

The State argues the DCBS employee defendants were entitled to qualified immunity. The district court did not reach this question, and neither do we, given the underdeveloped record.

2. The district court correctly dismissed Pounds's due process claim because Pounds did not adequately plead allegations sufficient to satisfy the "stigma plus" test. *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002). To state a due process claim under the Fourteenth Amendment, Pounds "must show the public disclosure of [an alleged] stigmatizing statement by the government, the accuracy of which is contested, *plus* the denial of 'some more tangible interest[] such as employment,' or the alteration of a right or status recognized by state law." *Id.* (citation omitted). "Accusations of dishonesty or immorality are sufficiently stigmatizing to implicate a liberty interest, but less severe accusations must be analyzed on a case-by-case basis, and allegations of mere incompetence or inability are not sufficient." *Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 925 n.6 (9th Cir. 2013). An "interest in reputation alone" is insufficient to meet the alteration of a right or status prong of the "stigma plus" test. *See Paul v. Davis*, 424 U.S. 693, 711 (1976).

Pounds's claim falters at the "plus" portion of the "stigma plus" test. His

7

claim boils down to alleging a harm to his reputation, which the Supreme Court has soundly rejected as insufficient to meet the stigma plus test. *See id.* Pounds leans on language in the Oregon Constitution to try to save his claim: "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation." Or. Const. art. I § 10. But the Oregon Supreme Court has made clear that "Article I, section 10, guarantees injured persons a remedy in due course of law for their injuries [that have already occurred]; it is not a 'due process' clause." *State v. Hart*, 699 P.2d 1113, 1120 (Or. 1985) (en banc). Thus, Pounds's allegations do not state a claim for a due process violation.

3. The district court did not err in denying Pounds an opportunity to amend his due process claim because any "proposed amendment [would] either lack[] merit or would not serve any purpose because to grant it would be futile in saving [his] suit." *Universal Mortg. Co. v. Prudential Ins.*, 799 F.2d 458, 459 (9th Cir. 1986).

In sum, we reverse the district court's dismissal of Pounds's First Amendment retaliation claim and remand for proceedings consistent with this disposition, but otherwise affirm the district court.

**REVERSED in part, AFFIRMED in part, and REMANDED.**[4]

---

[4] DCBS shall bear Pounds's costs on appeal.